LAW OFFICES
# DiTommaso ♦ Lubin
A PROFESSIONAL CORPORATION

THE OAKBROOK TERRACE ATRIUM
17W 220 22ND STREET
SUITE 200
OAKBROOK TERRACE, ILLINOIS 60181
TELEPHONE 630.333.0000
FACSIMILE 630.333.0333

OAKBROOK TERRACE
CHICAGO
PHOENIX

BRIAN C. WITTER
Of Counsel
DIRECT LINE 630.333.0004
bcw@ditommasolaw.com

October 11, 2006

**VIA ECF AND UNITED STATES MAIL, FIRST CLASS**
The Honorable Kiyo A. Matsumoto, U.S.M.J.
Eastern District of New York
225 Cadman Plaza East
Brooklyn NY 11201

Re: *Eckhaus v. Nature's Pillows, Inc., et al.* (EDNY) 06-CV-985(FB)(KAM)

Dear Judge Matsumoto:

     We represent the plaintiff in the above-entitled case, and write in opposition to defendants' letter motion seeking a protective order to bar plaintiff from seeking necessary discovery from certain of defendants' customers.

     This matter involves an animal and human urine cleaning product, Urine Gone™ ("Urine Gone") that defendants' brought to market in early 2005 and advertised through two infomercial broadcasts before rolling it out nationwide via television, catalog, and internet sales, including through AsSeenOnTV.com and the Harriet Carter Catalog, as well as through national retail chains such as Wal-Mart, Walgreens, Bed Bath & Beyond, Target, CVS, Linens-N-Things, among others. Plaintiff has alleged that the product does not work as advertised and has learned that Urine Gone's touted "active enzymes" formulation includes just one enzyme, Purafect 4000-L, which only reacts with proteins and, therefore, does nothing to eat urea or concentrated uric acid crystals or, consequently, to remove or eliminate the stains and odors of urine—or to keep animals from remarking their territory—as the advertising, packaging, and labeling of the product represents.

     Plaintiff seeks discovery from a small select group of defendants' customers for three reasons, each of them reasonably calculated to lead to the discovery of admissible evidence. First, plaintiff seeks this customer discovery—from one online seller, one catalog company, and three big-box retailers—to discover what representations were made to these outlets about Urine Gone to get them to agree to stock and sell it. Second, plaintiff seeks any independent testing done by these retailers on Urine Gone concerning the cleaner's effectiveness in eliminating urine. Finally, plaintiff seeks from these sellers any customer complaints they received about the product. Such is hardly the proverbial fishing expedition, casting the net wide for tangentially related information, much less the calculated act of malice to harm defendants' business as the

LAW OFFICES
DiTOMMASO ♦ LUBIN
A PROFESSIONAL CORPORATION

The Honorable Kiyo A. Matsumoto
October 11, 2006
Page Two

motion maintains. Instead, these subpoenas represent carefully tailored discovery requests that seek information central to the proof of the plaintiff's case.

Indeed, defendants' motion and attached declaration both fail to make a case for any real harm beyond the vague and conclusory claims that plaintiff's discovery poses an economic threat to defendant's business. Defendants' claims of such potential harm are illusory, and Mr. Specter's declaration presents no evidence that production of the requested documents would work *any injury*, much less the clearly defined injury that the case law speaks of when balancing the parties' interests in these circumstances. **Waelde v. Merck Sharp & Dohme**, 94 FRD 27, 29 (ED MI 1981). Similarly, too, defendants make no effort to quantify the seriousness of any harm they might suffer; nor do they present any evidence for this Court to find that they are entitled to a protective order. And even if there were specific instances, they must be set forth in more than mere briefs or general allegations or an affidavit. **United States v. Hooker Chemicals & Plastics Corp.**, 90 FRD 421 (WD NY 1981).

Under Fed. R. Civ. P. 26(c), the burden is on the party from whom discovery is sought to establish its right to a protective order by showing "good cause." A showing of "good cause" has generally been defined as a "heavy burden" of demonstrating that disclosure will work "clearly defined and very serious injury." **Waelde**, *supra* at 29. The bar is set high for such movants because it is contemplated—and, indeed, it is a central principle underlying all litigation—that discovery will take place in the open unless compelling reasons exist for imposing confidentiality. *See e.g.*, **Broan Mfg. Co. v. Westinghouse Electric Corp.**, 101 FRD 773, 774 (ED WI 1984); **AT&T v. Grady**, 594 F2d 594, 596 (7th Cir 1979). Secrecy is clearly the exception, not the rule. **Citicorp v. Interbank Card Assn.**, 101 FRD. 773, 774 (SD NY 1979). The presumption, of course, is that such protective orders should seldom be necessary and, therefore, that the movant must show compelling reasons for the entry of an order. Certainly an order, such as defendants seek, muzzling reasonable inquiries, should not be countenanced absent a strong and specific showing, a burden defendants have in no way met.

A party only has standing to move to quash subpoenas issued to third parties under limited circumstances. In these cases, as noted above, the burden is upon the moving party to demonstrate a *clearly defined and serious economic injury by a particular and specific demonstration of fact*, as distinguished from conclusory statements. Thus, this requirement of particularized proof means that defendants, in seeking such a protective order, must come forward with specific examples of competitive harm. NPI has not met this test. Nor is it clear under the circumstances presented how defendants could ever meet such a burden. Plaintiff has simply requested a narrow group of documents from these customers—ones plainly relevant to the instant claims—through the routine process of a records subpoena which will be processed

LAW OFFICES
**DiTommaso ♦ Lubin**
A PROFESSIONAL CORPORATION

The Honorable Kiyo A. Matsumoto
October 11, 2006
Page Three

in the normal course of business by a compliance staff that deals with such matters on a daily basis (and in the case of Wal-Mart and the larger retailers doubtless thousands of time *per annum*.)

The information plaintiff seeks from these few customers is clearly relevant, routine, plainly discoverable, and is in fact central to this case. Representations to retailers, tests of the product done by retailers, and customer complaints about the product—all of these areas of inquiry should be freely open and discoverable. Indeed, plaintiff naturally expected to receive these documents in the defendants' document productions, but defendants have produced almost no documents concerning what they have told retailers to convince them to stock and sell the product. Nor, of course, has plaintiff seen any retailers' independent tests or their evidence of customer feedback. Defendants claim that they use almost no documents to market the product to retailers. Yet, even if such were true—leaving aside the fact the retailers may have documents referencing defendants' oral representations—plaintiff is entitled to test this claim with third-party discovery and (possibly) to recall defendants' party deponents for follow-up questioning concerning any documents that may surface through this essential phase of third-party discovery.

It should also be noted that, contrary to Mr. Specter's declaration, defendants suffered no evident harm when plaintiff earlier subpoenaed Bed, Bath & Beyond on the single issue of Urine Gone's sales figures with that retailer. Although defendants' counsel yelped at the time about the potential for public embarrassment and associated harms, none of these dire forecasts ever came to pass and Bed Bath & Beyond simply—and with alacrity—responded with the sales figures within a matter of days. (The retailer responded so swiftly that the documents crossed in the mail with a letter from plaintiff's counsel agreeing to withdraw the request as defendants had agreed voluntarily to supply the sales data. Such routine corporate compliance with legal process could not perhaps be better demonstrated. Meanwhile, Bed Bath & Beyond continues to sell the defendants' product.) Finally, defendants claim that they have received virtually no consumer complaints or returns. (In fact, this is one of the bases for dismissal that was raised with Judge Block during the pre-motion conference.) Without taking the proposed third-party customer discovery, plaintiff is in no position to asses the veracity of defendants' claims concerning complaints and returns.

For all of the foregoing reasons, this Court should refuse to entertain the defendants' motion for a protective order as to plaintiff's five customer subpoenas.

Sincerely yours,

Brian C. Witter

cc: All Counsel.