LAW OFFICES

# DiTommaso ♦ Lubin

A PROFESSIONAL CORPORATION

THE OAKBROOK TERRACE ATRIUM
17W 220 22ND STREET
SUITE 200
OAKBROOK TERRACE, ILLINOIS 60181
TELEPHONE 630.333.0000
FACSIMILE 630.333.0333

October 30, 2006

OAKBROOK TERRACE
CHICAGO
PHOENIX

BRIAN C. WITTER
Of Counsel
DIRECT LINE 630.333.0004
bcw@ditommasolaw.com

## VIA ECF AND UNITED STATES MAIL, FIRST CLASS

The Honorable Kiyo A. Matsumoto, U.S.M.J.
Eastern District of New York
225 Cadman Plaza East
Brooklyn NY 11201

Re: *Eckhaus v. Nature's Pillows, Inc., et al. (EDNY) 06-CV-985(FB)(KAM)*

Dear Judge Matsumoto:

Plaintiff writes to request that Defendants Brad Specter, Bill McAllister, and Nature's Pillows Inc. (collectively referred to as "the Nature's Pillows Defendants") be compelled to answer requests to admit asking if the protease enzymes in Urine Gone made by Innovative Chemicals do what the Product's advertisements and label say they do (i.e., eliminate the aspects of urine that make it smell bad by finding, attacking, and essentially digesting or eating such elements).[1] (See Exhibit A, attached hereto.) The parties have conducted a discovery conference on this issue, have not resolved the issue on their own, and agree that it should be resolved by the Court.

The following requests to admit are the ones at issue from Plaintiff's Third Set of Requests to Admit:

65.     Purafect 4000L is ineffective against uric acid or urea salts.

66.     ICC Urine Gone Component Purafect 4000L is incapable of making a chemical change to uric acid or urea salts.

---

[1]     "Look, ordinary Cleaners only mask the stain … but urine gets absorbed deep into the pad and down into the floor boards where the odor grows. But Urine Gone's amazing enzymes have an appetite for urine, they find it, break it down and digest it completely…. Urine Gone works on virtually any surface indoors and out!" (See Exhibit A, attached hereto); "The new odor and stain eliminator with powerful enzyme action!" (See Exhibit A, attached hereto); "Spray it on & it's Gone!" (Exhibit B, attached hereto); "Stain & Odor Eliminator" (See Exhibit B, attached hereto); "Fast-acting Enzyme Action attacks urine and other organic matter (such as feces, blood, saliva and more) and essentially eats up their stains and odors" (See Exhibit C, attached hereto); "Enzyme Action!" (See Exhibit C, attached hereto).

LAW OFFICES
# DiTommaso ◆ Lubin
A PROFESSIONAL CORPORATION

Page Two
October 30, 2006
Re: *Eckhaus v. Nature's Pillows, Inc., et al. (EDNY) 06-CV-985(FB)(KAM)*

67.     Maxatase is ineffective against uric acid or urea salts.

68.     Maxatase is incapable of making a chemical change in uric acid or urea salts.

The following request to admit is the one at issue from Plaintiff's Second Set of Requests to Admit:

43.     Proteolytic enzymes cannot eat or eliminate uric acid crystals.

The Nature's Pillows' Defendants refuse to answer these requests to admit because they say the requests call for expert testimony. Yet these defendants can simply ask the manufacturer that they hired to produce Urine Gone, Innovative Chemicals, who represented to Defendants that the produce worked as advertised, to provide them with the information needed to answer these requests.[2] (See Exhibits D and E, attached hereto.)

Since the information needed to answer the above requests to admit is readily accessible to the Nature's Pillows Defendants, who used such information to disseminate advertising to the consuming public, the Nature's Pillows Defendants should respond to the above requests to admit. ***Henry v. Champlain Enterprises Inc.***, 212 FRD 73 (NDNY 2003) ("reasonable inquiry [required by requests to admit] includes an investigation and inquiry of employees, agents, and others, "who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response.").

---

[2]     Urine smells because it contains ammonia gas and because when the uric acid and urea elements of urine decompose they let off ammonia gas. There is very little protein in normal urine, and such protein does not impact the creation of ammonia gas or the smell associated with it. To be effective and do what it says it does, Urine Gone must contain bacteria that emit urease enzymes (the enzymes that break down urea and uric acid), and then eat or digest what remains of the urea and uric acid after the urease enzymes break it down. This is how the Urine Gone manufactured by the original manufacturer, Medallion, worked. (See Exhibit F, attached hereto.) Instead, the Urine Gone currently sold by defendants and manufactured by Innovative Chemicals contains protease enzymes, which were sold under the trade names Maxatase and Purafect. Protease enzymes, as defendants can readily learn from Innovative, can have no impact on urea or uric acid aspects of urine that give rise to the ammonia gas smell, and therefore cannot perform in the manner advertised by Defendants. Defendants simply want to pretend ignorance to avoid telling the truth and responding to the requests to admit at issue, which will force them to admit that Urine Gone does not do what they say it does.

LAW OFFICES

# DiTommaso ♦ Lubin
A PROFESSIONAL CORPORATION

Page Three
October 30, 2006
Re: *Eckhaus v. Nature's Pillows, Inc., et al. (EDNY) 06-CV-985(FB)(KAM)*

As ***S.E.C. v. Thrasher***, 1996 WL 507318 (SDNY 1996) holds:

> Requests to admit serve as a device to narrow issues for trial. ***See, e.g., Donovan v. Carls Drug Co.***, 703 F2d 650, 652 (2d Cir 1983); ***Beberaggi v. New York City Transit Auth.***, 1994 WL 18556, at *3 (SDNY Jan 19, 1994). To that end, the party on whom such requests are served is obliged to make reasonable efforts to ascertain the accuracy of the proposed admissions before responding, even if he lacks personal knowledge of the facts. Nonetheless, the requested party may respond by denying sufficient knowledge, provided that he represents that he has made such reasonable efforts to determine the facts. Fed. R. Civ. P. 36(a). ***See, e.g., Beberaggi***, 1994 WL 18556, at *5 (citing ***Asea, Inc. v. Southern Pac. Transp. Co.***, 669 F2d 1242 1245-47 (9th Cir 1981)). When imposing an obligation on the responding party to seek out information in order to answer a request, the courts have generally acted only in circumstances in which the responding party has the means independently to ascertain the truth. Thus, if the information is held by the responding party or by an individual or entity with which the responding party maintains a relationship that enables it readily to procure the required information, then that party may be expected to seek out the information and respond substantively to the request for an admission. ***See, e.g., Caruso v. The Coleman Co.***, 1995 WL 347003, at *5 (ED Pa 1995) (defendant to make admissions based on knowledge of own employee); ***Sequa Corp. v. Gelmin***, 1994 WL 538124, at *5 (SDNY 1994) (same); ***In re Gulf Oil/Cities Services Tender Offer Litig.***, 1990 LEXIS 5009, at *7-8 (SDNY 1990) (citing cases) (information held by another litigant with parallel interests and with which defendants were closely cooperating).

The Nature's Pillows' Defendants have advertised that Urine Gone's "active enzymes" eliminate the odor-causing elements of urine by finding, attacking, and essentially digesting or eating such elements. Defendants cannot claim ignorance as to this process, particularly with their access to fact witnesses with knowledge of whether the protease enzymes Purafect 4000L and Maxatase, which are used by Innovative Chemicals in the Urine Gone formula, perform in the manner advertised. Accordingly, Plaintiff requests that this Court compel the Nature's Pillows' Defendants to answer the five requests to admit that are the subject of this letter.

Sincerely yours,

Brian C. Winter

BCW:dn
cc: All Counsel